FILED

00 FEB 17 AM 10: 06

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

FEB 17 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Eastern Division

In the matter of:            )
                             )
SHELDIA D. HEARD,            )      CV-00-P-32-E
                             )
    Debtor- Appellee.        )
                             )

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Eastern Division

## Opinion

Before the court is an appeal taken by Appellant Amsouth Bank, who seeks review of orders by the United States Bankruptcy Court finding that Amsouth has not the holder of a claim secured by a perfected security interest in a 1996 Ford Windstar Van owned by Sheldia Heard. For the reasons expressed below, the decision of the Bankruptcy Court is due to be vacated.

### I. Facts

On June 20, 1997, Sheldia Heard bought a car from Pollock Motor Car Co. At that time, a document entitled "Installment Sale Contract and Security Agreement" was signed by both Pollock Motor Co. and Sheldia Heard. Some "Additional Terms and Conditions" were attached to the contract, including a section entitled "Assignment and Guaranty" which set out the terms for an assignment of the contract.[1] Karen Guyton of Pollock Motor Company signed this assignment agreement; however, the line where the name of the assignee was to be filled in was left blank. Nevertheless, Pollock later delivered the executed contract between Pollock and Ms. Heard and the signed assignment agreement to Amsouth Bank, who provided the funds for the purchase of the vehicle. Pollock also submitted an Application for Certificate of Title for the vehicle to the State of Alabama listing Sheldia Heard as owner and Amsouth Bank as lienholder.

On June 25, 1999, Sheldia Heard filed a voluntary petition in bankruptcy under Chapter 13. Amsouth then filed a Motion for Relief From Automatic Stay or Alternatively for Adequate Protection Payments with the Bankruptcy Court on August 18, 1999. No responses were filed by the Debtor or the Trustee, and Amsouth and Ms. Heard reached an agreement to settle the motion prior to a set hearing. Nevertheless, the Trustee ultimately raised an issue as to the

---

[1] This portion of the contract was an addendum attached to the "Installment Sale Contract and Security Agreement" and was printed on an Amsouth form, as is indicated by the company's logo found below Karen Guyton's signature.



adequacy of the assignment of the contract and security interest to Amsouth. The Bankruptcy Court then held a hearing on the issue and denied Amsouth's motion, holding that Amsouth had not established any assignment or any rights or security interest in the debtor's 1996 Ford Windstar. A motion for reconsideration was subsequently filed by Amsouth, along with an affidavit from Karen Guyton of Pollock, which stated that the "Assignment and Guaranty" was executed by Pollock for the purpose of assigning its rights and interests under the contract to Amsouth. Nevertheless, Amsouth's Motion for Reconsideration was denied by the Bankruptcy Court following a hearing on October 20, 1999. In so ruling, the Court reiterated its prior finding that Amsouth did not have a perfected security interest in the van, stating that failure of the parties to fill in the blank was a fatal error and that "the parties are not able to circumvent that absence of documentation by testimony that it was the intent of the parties to make an assignment...." Amsouth brought this appeal pursuant to 28 U.S.C. § 158, challenging the above orders by the United States Bankruptcy Court.

## II. Discussion

Article 9 of the Alabama Commercial Code governs how a security interest in a motor vehicle arises. This article provides maximum coverage for secured parties where the following two requirements are satisfied: (1) attachment or creation of a security interest and (2) perfection of the security interest. Section 7-9-203 provides that a security interest is not enforceable against the debtor and does not attach unless:

> (a) The collateral is in the possession of the secured party pursuant to agreement, ... or the debtor has signed a security agreement which contains a description of the collateral ....
> (b) Value has been given; and
> (c) The debtor has rights in the collateral.

ALA. CODE § 7-9-203 (1975).

Section 32-8-61 sets out specific procedures for perfection of security interests in vehicles. Under this provision, a security interest in a vehicles "is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee." ALA. CODE § 32-8-61(b) (1975). While there is no provision in the Alabama Code which sets forth specifications or requirements as to the form of an assignment of a security interest in a motor vehicle, § 32-8-63 does recognize assignment of security interests in vehicles. Specifically, this section provides that "[a] lienholder may assign, absolutely or otherwise, his security interest in the vehicle to a person other than the owner without affecting the interest of the owner or the validity of the security interest, but ... the lienholder remains liable for any obligations of the lienholder until the assignee is named as lienholder on the certificate in the manner prescribed by the department." ALA CODE. § 32-8-63(a).

In the present case, Pollock Motor Co. obtained a valid security interest in the 1996 Ford Windstar that it sold to the debtor. It is undisputed that the "Installment Sale Contract and Security Agreement" was executed by the debtor and Pollock on June 20, 1997. This agreement satisfied the requirements of § 7-9-203(a): it contained a valid description of the vehicle and was

signed by the debtor. Furthermore, value was given by Pollock when it agreed to give possession of the van to the debtor in exchange for her agreement to pay the installments provided for under the contract. Once the debtor took possession of the vehicle, she acquired rights in the collateral, and Pollock's security interest in the vehicle attached.

The fact that Pollock's security interest was unperfected at the point when it executed the "Assignment and Guaranty" is of little consequence. Perfection is not required for a secured party to assign its security interest in a vehicle. In fact, there are no Alabama statutes which prescribe standards for assignment of a security interest. As such, the Alabama Supreme Court has determined that courts should look to the substance rather than form in determining whether a valid assignment has occurred. *See Baker v. Eufala Concrete Company, Inc.*, 557 So. 2d 1228, 1230 (Ala. 1990). An assignment may therefore be "written, parol, or otherwise," and the test for making a determination on an assignment's validity is "whether the purported assignor intended to transfer a present interest in the subject matter of the contract." *Baker*, 557 So. 2d at 1230.

In this case, the Bankruptcy Court held that Amsouth did not have a perfected security interest in the Ford Windstar because the failure of the parties to fill in the name of the assignee on the "Assignment and Guaranty" form invalidated any attempt by Pollock Motor Co. to assign any interest to Amsouth. However, following the Alabama Supreme Court's test for determining whether a valid assignment has occurred, all facts lead to the conclusion that there was an assignment in this case: the original contract was delivered by Pollock to Amsouth; the assignment was signed by Pollock and delivered to Amsouth; Amsouth extended the loan funds for the purchase of the vehicle; Pollock listed Amsouth as the lienholder on the title application for the vehicle; the debtor has been paying Amsouth on this note; and the debtor listed Amsouth as a secured creditor in her bankruptcy petition and proposed payment to Amsouth as part of her plan. Taking these facts into consideration, it is evident that Pollock intended to assign its security interest in the 1996 Ford Windstar to Amsouth.[2] Therefore, a valid assignment occurred in this case, regardless of the blank found in the "Assignment and Guaranty" contract. This assignment effectively transferred Pollock's security interest to Amsouth, notwithstanding the lack of any formal agreement between Amsouth and the debtor in this case. *See* ALA CODE § 32-8-63(a)(1975)("A lienholder may assign ... his security interest in a vehicle ... without affecting the ... validity of the security interest ....").

### III. Conclusion

Based on the facts and the law, this court must conclude that on or about June 20, 1997, Debtor Sheldia Heard granted a security interest in a 1996 Ford Windstar Van to Pollock Motor Co., Inc. Concurrently, Pollock assigned its contract rights and security interest to Amsouth Bank. Amsouth's security interest was perfected shortly thereafter, when Pollock delivered to the State of Alabama Department of Revenue an application for a certificate of title listing the name and address of Amsouth as the lienholder and the date of the security agreement. *See* ALA. CODE § 32-8-61(b) (1975). As such, it is the opinion of this court that the decision of the Bankruptcy Court denying Amsouth's Motion for Relief from the Automatic Stay or Alternatively for Adequate Protection is

---

[2] Karen Guyton of Pollock also testified that this was, in fact, the intention of Pollock Motor Co.

due to be vacated, and this case is due to be remanded for reconsideration of Appellant's relief request in a manner consistent with this opinion.

Dated: _February 16_, 2000

_____
Judge Sam C. Pointer, Jr.

Service List:
  Linda B. Gore
  Charles R. Johanson, III
  Charles D. Martin
  William L. Phillips, III